IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EARL CHARLES MARTIN, JR., | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3557 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| *Respondent.* | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed a section 2254 habeas case challenging his conviction and life sentence for aggravated sexual assault of a child under fourteen years of age. Respondent filed a motion for summary judgment (Docket Entry No. 18), to which petitioner filed a response (Docket Entry No. 23).

Having considered the motion, the response, the pleadings, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this lawsuit for the reasons shown below.

### *Background and Claims*

Petitioner was convicted of aggravated sexual assault of a child under fourteen years of age (enhanced) and sentenced to life imprisonment. The conviction was affirmed on appeal. *Martin v. State*, No. 01-14-00202-CR, 2014 WL 7174256 (Tex. App.—Houston [1st Dist.] Dec. 16, 2014, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review, and denied his application for state habeas relief on September 12, 2018.

In the instant habeas proceeding, petitioner claims that trial counsel was ineffective in the following particulars:

1. failing to investigate the facts to present a meritorious defense;

2. failing to interview and call material witnesses;

3. failing to have the State make an election; and

4. failing to subject the State's case to meaningful adversarial testing because counsel's defense theory was flawed.

Respondent argues that these habeas grounds have no merit and should be summarily dismissed.

### *Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction.

> [Complainant's] mother was in a relationship with Martin. For a time, they lived with Martin in his home. [Complainant] testified that Martin sexually assaulted her three times during the time she and her mother lived with him. These incidents occurred when [complainant] was 12 years old.
>
> In the first incident, [complainant] was lying on her stomach on her bed when Martin came into her bedroom, took her phone, and left. He returned a couple of minutes later when he realized the phone was locked. After he put the phone down, he sat down next to her and started rubbing [her] back. Martin climbed onto the bed and reclined beside [complainant], continuing to rub her back. Then, Martin got on top of her and moved his hips up and down on her back.
>
> In the second incident—which served as the basis of the indictment against Martin—[complainant] was in her bedroom, lying on her back in her nightgown, when Martin entered her room. He got on top of her, kissed her, and inserted his fingers into her vagina.

2

> Before the third incident occurred, Martin's son came to live with his father. Martin's son moved into the bedroom where [complainant] had been and [complainant] slept on the living room couch.
>
> One night, [complainant] was lying on her back on the sofa when Martin approached. Martin touched [her] breasts, got on top of her, and began moving his body up and down. Next, he took [complainant's] hand, put it on his penis, and made [her] move her hand up and down on his penis. [Complainant's] mother walked into the room and Martin quickly stopped, stood up, and explained that he was just giving [complainant] a goodnight kiss. At the time, [complainant] did not say anything to her mother about Martin's conduct. A few years later, [complainant's] mother learned from the parent of [complainant's] friend that [complainant] had confided in the friend about Martin's abuse. After [complainant] confirmed the abuse, her mother took her to report the incident to the Houston Police Department. Officer C.M. Broussard, of HPD's Juvenile Division Sex Crimes Unit, recorded [complainant's] statement. The investigation led to the indictment against Martin.

*Martin*, 2014 WL 7174256, at *1.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set

3

of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El*

v. *Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

*Failure to Investigate*

Petitioner claims that trial counsel failed to investigate the facts of the case.

In rejecting petitioner's claim for ineffective assistance, the trial court on collateral review made the following relevant finding of fact:

> 29. Applicant fails to meet his burden of alleging sufficient facts, which if true, would show counsel was deficient in his investigation of the case.

(Docket Entry No. 17-26, pp. 45–46.) The trial court also made the following relevant conclusions of law:

> 2. Applicant fails to show that the results of a more in-depth investigation of the facts of the case would have made a difference in the outcome of the case.
>
> \* \* \* \*
>
> 7. Applicant fails to show trial counsel's representation fell below an objective standard of reasonableness in any way and that, but for counsel's alleged deficiencies, there is a reasonable probability that the result of the proceeding would have been different.

7

8. Based on the totality of the representation and the particular circumstances of the case, trial counsel provided applicant with reasonably effective assistance of counsel.

9. Courts will not "second-guess through hindsight" the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

*Id.*, pp. 47–48 (citations omitted). The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact and conclusions of law in denying habeas relief. (Docket Entry No. 17-19, p. 1.)

It is well established that a defense counsel has a duty to make reasonable investigations or make a reasonable decision that a particular investigation is unnecessary. *See Gregory v. Taylor*, 601 F.3d 347, 353–54 (5th Cir. 2010); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). However, a habeas petitioner's bare allegations of a failure to investigate do not suffice to warrant relief. To prevail on a claim for ineffective assistance premised on counsel's failure to investigate, a petitioner must allege with specificity what further investigation would have revealed and how it would have altered the outcome of the trial. *Id.*, 989 F.2d at 850.

Petitioner presents no probative summary judgment evidence of any additional investigation that, had counsel undertaken, would have changed the outcome of the trial. To the contrary, he repeats allegations of counsel's failure to interview defense witnesses, which is raised and addressed in a separate ground for relief below. Petitioner's bald assertions of a failure to investigate are insufficient to raise a genuine issue of material fact

8

or to warrant habeas relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Interview and Call Witnesses*

Petitioner alleges that counsel failed to interview and call material witnesses at trial.

In responding to this claim on state collateral review, trial counsel submitted the following testimony by affidavit to the trial court:

> [Petitioner] provided me a letter from John Beuhler prior to trial. Beuhler's letter spoke of the thoughtful and loving character of [petitioner]. However, Beuhler had no information relating to the instant case and his character testimony during the guilt-innocence phase would not have been beneficial to [petitioner] because it would have opened the door for the State to present rebuttal testimony regarding [petitioner's] prior conviction for aggravated sexual assault of a child.
>
> Stacey Diggs was a co-worker of [petitioner]. Diggs had no information relating to the instant case and his character testimony during the guilt-innocence phase would not have been beneficial to [petitioner] because it would have opened the door for the State to present rebuttal testimony regarding [petitioner's] prior conviction.
>
> Dwann Johnson was Mr. Taylor's wife. Johnson had no information relating to the instant case and his [sic] testimony would not have been beneficial.
>
> Deshaund Bishop is the mother of one of [petitioner's] younger children. Bishop had no information relating to the instant case, and any character evidence she would have provided at trial would have opened the door for

9

the State to present rebuttal testimony regarding [petitioner's] prior conviction.

Prior to trial, [petitioner] and I discussed Jamesa Wilks. [Petitioner] also provided me with a sworn affidavit from himself, dated May 8th, 2013 detailing his concerns about Wilks. Wilks' alleged lies "to get money" were not related to the instant case and were not part of her testimony. She could not be impeached with specific character evidence unrelated to the instant case. [Petitioner] would not have been an appropriate impeachment witness for Wilks because it would have exposed him to cross-examination by the State on his prior conviction for sexual assault of a child.

I was aware that Clara Davis, [petitioner's] mother, was in the residence during the time of the offense. Clara Davis suffered a stroke and was living with [petitioner] as a result. Davis could not remember anything and as a result would not have been a beneficial witness.

Earl Taylor is [petitioner's] eldest son. I interviewed Taylor and he had moved out of the residence in approximately March of 2010, when Clara Davis moved in, before the offense date and as a result did not have any information beneficial to [petitioner's] defense.

I was told by Myranda Gipson that Crystal Taylor, the named victim on [petitioner's] previous conviction, had recanted her accusations. She was interviewed as a result, and was available as rebuttal in the event that the State of Texas offered this prior in the guilt/innocence phase. [Petitioner's] prior conviction was not admitted during the guilt-innocence phase of trial as counsel's objection for improper notice was sustained by the Court. Ensuring the jury did not hear about [petitioner's] previous conviction during guilt-innocence was part of my trial strategy to help maintain the presumption of innocence. As it was a final conviction and [petitioner] was facing an automatic life sentence as a repeat sex offender there were no legal means to attack the prior conviction at the trial court level. [Petitioner] was advised on many occasions that this would need to be addressed via a post-conviction writ for the prior conviction.

(Docket Entry No. 17-26, pp. 24–26.)

In rejecting petitioner's claim for ineffective assistance, the trial court on collateral review made the following relevant findings of fact:

15. Based on the credible affidavit of [trial counsel], [applicant] provided [counsel] a letter from John Beuhler prior to trial. Beuhler's letter addressed [applicant's] loving character; however, it had no relation to the instant case. [Counsel] did not find it beneficial or necessary to provide testimony of [applicant's] character during the guilt-innocence phase of trial because it would have opened the door for rebuttal testimony regarding [applicant's] prior conviction.

16. Based on the credible affidavit of [trial counsel], [counsel] was aware of Stacy Diggs and Deshaund Bishop and their willingness to testify during the guilt-innocence phase of trial. However, Diggs and Bishop did not have any information on the instant case and any character testimony during guilt-innocence would have opened the door to rebuttal testimony regarding [applicant's] prior conviction.

17. Based on the credible affidavit of [trial counsel], Dwann Johnson was Mr. Taylor's wife. Johnson had no information relating to the instant case and her testimony would not have been beneficial.

18. Based on the credible affidavit of [trial counsel], prior to trial, [counsel] and [applicant] discussed Jamesa Wilks' credibility. [Applicant] provided [counsel] with a sworn affidavit from himself detailing his concerns about Wilks. However, Wilks' alleged lies for monetary gain were not a part of her testimony and as such she could not be impeached with specific character evidence unrelated to the instant case pursuant to TEX. R. EVID. Rule 608.

19. Based on the credible affidavit of [trial counsel], [applicant] was not an appropriate impeachment witness for Wilks' credibility because it would have exposed him to cross-examination by the State regarding his prior conviction.

20. Based on the credible affidavit of [trial counsel], Clara Davis, [applicant's] mother, was in the residence at the time of the offense. However, Davis suffered a stroke and as a result was unable to recall anything relevant to the incident and her testimony would not have been beneficial.

21. Based on the credible affidavit of [trial counsel], [counsel] interviewed Earl Taylor and learned he moved out of the residence in March 2010, before the offense date and as a result did not have any beneficial testimony.

22. Based on the credible affidavit of [trial counsel], Myranda Gipson informed [counsel] that Crystal Taylor, the victim in [applicant's] previous conviction, had recanted. However, the guilt-innocence phase of trial was not the appropriate forum to explore that possibility.

23. Based on the credible affidavit of [trial counsel], [counsel] discussed with [applicant] the fact that to explore Taylor's alleged recantation, [applicant] would need to file a writ in that case.

24. Based on the credible affidavit of [trial counsel], Taylor was available as a rebuttal witness in the event that [applicant's] prior conviction was offered during guilt-innocence. The prior conviction was never admitted during guilt-innocence, as [trial counsel's] objection for improper notice was sustained by the court.

25. Applicant fails to demonstrate which of the listed witnesses was material to his case and how any of their testimony would have affected the outcome of the trial.

*Id.*, pp. 42–45 (citations omitted). The trial court further made the following relevant conclusions of law:

4. Applicant fails to show his trial counsel was deficient in failing to conduct witness interviews because he fails to allege what more in-depth investigations by trial counsel would have revealed.

5. Applicant fails to show that the listed witnesses' testimony would have been of some benefit to the defense.

* * * *

7. Applicant fails to show trial counsel's representation fell below an objective standard of reasonableness in any way and that, but for counsel's alleged deficiencies, there is a reasonable probability that the result of the proceeding would have been different.

8. Based on the totality of the representation and the particular circumstances of the case, trial counsel provided applicant with reasonably effective assistance of counsel.

12

> 9. Courts will not "second-guess through hindsight" the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

*Id.*, pp. 47–48 (citations omitted). The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact and conclusions of law in denying habeas relief. (Docket Entry No. 17-19, p. 1.)

With respect to trial witnesses, the Fifth Circuit Court of Appeals "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Conclusory claims are insufficient to entitle a habeas petitioner to relief, *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989), and hypothetical or theoretical testimony will not justify relief. *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986).

Decisions as to what witnesses to present constitute matters of trial strategy. Counsel's affidavit testimony in this case made clear that one primary defensive goal at trial was keep out evidence of petitioner's prior conviction for aggravated sexual assault of a child. Counsel was familiar with the witnesses and their potential testimony, and was of the opinion that their testimony could open the door to evidence of the otherwise excluded conviction. In short, counsel believed that allowing the witnesses to testify would potentially do more harm than good, and as a matter of trial strategy, elected not to call the witnesses at trial. Petitioner does not rebut the strong presumption that counsel's

13

decisions were reasonable trial strategy, nor does he show that, but for counsel's failure to call the witnesses at trial, there is a reasonable probability that the result of the trial would have been different.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Require an Election by the State*

Petitioner next contends that counsel failed to have the State make an election as to the grounds for sexual assault it would rely upon at trial.

In responding to this claim on state collateral review, trial counsel submitted an affidavit wherein he testified as follows:

> I did not find it beneficial or necessary to ask for an election on which act that the State would be proceeding on because there was only one indictment in the case, and only one of the three events the complainant testified to at trial included the conduct in the indictment.

(Docket Entry No. 17-26, p. 26.)

In rejecting petitioner's claim of ineffective assistance, the trial court on collateral review made the following relevant finding of fact:

> 14. Based on the credible affidavit of [trial counsel], [counsel] did not find it beneficial or necessary to ask for an election on which act the State would be proceeding on because where was only one indictment, and only alleged one specific type of conduct within the indictment.

14

*Id.*, p. 42 (record citation omitted). The trial court further made the following relevant conclusions of law:

> 7. Applicant fails to show trial counsel's representation fell below an objective standard of reasonableness in any way and that, but for counsel's alleged deficiencies, there is a reasonable probability that the result of the proceeding would have been different.
>
> 8. Based on the totality of the representation and the particular circumstances of the case, trial counsel provided applicant with reasonably effective assistance of counsel.
>
> 9. Courts will not "second-guess through hindsight" the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

*Id.*, pp. 47–48 (citations omitted). The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact and conclusions of law in denying habeas relief. (Docket Entry No. 17-19, p. 1.)

The record supports the trial court's finding that there was only one criminal act alleged in the indictment. (Docket Entry No. 17-27, p. 135.) Consequently, there was no election by the State to be made. Petitioner does not show that, had counsel moved for an election, the trial court would have reversibly erred in overruling the motion. Petitioner further fails to show that, but for counsel's failure to move for an election, there is a reasonable probability that the result of the trial would have been different. The record does, however, show that complainant testified that petitioner sexually assaulted her on two other occasions, which testimony the trial court allowed into evidence as extraneous offense evidence. Petitioner is incorrect in arguing that the State was required to "elect" the incident it would pursue and that it was limited to presenting evidence of only one

15

incident at trial. No deficient performance and actual prejudice are shown, and habeas relief is not merited.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Flawed Defense Theory*

Petitioner complains that counsel used a flawed defense theory at trial in lieu of the more promising theory he himself proposed. Counsel's defense theory was that complainant fabricated the incident to get out of trouble at school; petitioner's proposed theory was that complainant's mother, Jamesa Wilks, fabricated the incident for monetary gain.

In responding to this claim on state collateral review, trial counsel testified in his affidavit as follows:

> The trial strategy that the complainant fabricated the sexual abuse to get out of trouble was based on my discussions about the facts of the case with [petitioner]. There were no other reasonable trial strategies available based on my review of the law and the facts available. Given that [petitioner] had a prior conviction for Sexual Assault of a Child, great care had to be taken with trial strategy not to open the door to its admissibility. This strategy was agreed upon by petitioner after numerous discussions with counsel.

(Docket Entry No. 17-26, p. 26.) Thus, according to counsel, his trial strategy was two-fold: show that complainant fabricated the sexual assault in order to get out of trouble, and

16

keep out evidence of petitioner's prior conviction for aggravated sexual assault of a child. Counsel stated, and the trial court found, that counsel discussed trial strategy with petitioner several times, and that petitioner agreed with counsel's strategy.

Counsel further testified in his affidavit that,

> Prior to trial, [petitioner] and I discussed Jamesa Wilks. [Petitioner] also provided me with a sworn affidavit from himself, dated May 8th, 2013 detailing his concerns about Wilks. Wilks' alleged lies "to get money" were not related to the instant case and were not part of her testimony. She could not be impeached with specific character evidence unrelated to the instant case. [Petitioner] would not have been an appropriate impeachment witness for Wilks because it would have exposed him to cross-examination by the State on his prior conviction for sexual assault of a child.

*Id.*, p. 24.

In rejecting petitioner's claim of ineffective assistance, the trial court on collateral review made the following relevant findings of fact:

> 11. Based on the credible affidavit of [trial counsel], [counsel's] defensive theory that the victim fabricated sexual abuse to get out of trouble was based on discussions about the facts of the case with [applicant]. After discussing the facts of the case with [applicant], [counsel] believed there were no other reasonable trial strategies available.
> 12. Based on the credible affidavit of [trial counsel], [counsel] discussed the agreed upon defensive strategy with [applicant] multiple times.
>
> 13. Based on the credible affidavit of [trial counsel], part of [his] trial strategy was to ensure that [applicant's] prior conviction for sexual assault of a child was not admitted during the guilt-innocence phase of trial, to help ensure the presumption of innocence.

*Id.*, p. 42 (record citations omitted). The trial court also made the following relevant conclusions of law:

3. Applicant fails to show that the results of a more in-depth investigation on unnamed alternative defensive strategies would have made a difference in the outcome of the case.

\* \* \* \*

7. Applicant fails to show trial counsel's representation fell below an objective standard of reasonableness in any way and that, but for counsel's alleged deficiencies, there is a reasonable probability that the result of the proceeding would have been different.

8. Based on the totality of the representation and the particular circumstances of the case, trial counsel provided applicant with reasonably effective assistance of counsel.

9. Courts will not "second-guess through hindsight" the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

*Id.*, pp. 47–48 (citations omitted). The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact and conclusions of law in denying habeas relief. (Docket Entry No. 17-19, p. 1.)

Counsel's decisions as to defensive theories for trial are a matter of professional trial strategy. To merit habeas relief, petitioner must rebut the strong presumption that counsel's actions and decisions were reasonable trial strategy. Petitioner must also show that, but for counsel's failure to follow petitioner's theory of defense, there is a reasonable probability that the results of the trial would have been different.

According to petitioner's proposed theory of defense, complainant's mother had a history of making false criminal allegations for monetary gain. In support, he relies on his own affidavit appearing in the state habeas record. (Docket Entry No. 17-27, p. 57.) In the affidavit, petitioner alleges that Jamesa Wilks had a history of making false

18

accusations, and had falsely accused her ex-boyfriend of assault. He stated that Wilks filed criminal charges against the ex-boyfriend, but stopped cooperating with authorities when she did not receive restitution through a crime victim's hotline. He states Wilks later told him that the ex-boyfriend had only yelled at her, not assaulted her.

As noted by counsel in his affidavit, Wilks' alleged false accusation did not involve the instant criminal proceedings and, under Texas law, could not be used to impeach Wilks at trial. Moreover, petitioner could not testify as to Wilks' conduct, because having him testify would open the door to evidence of his prior conviction. Petitioner did not identify any other individual who knew Wilks had fabricated the accusations, and he presents no probative summary judgment evidence that counsel's decisions as to a defense theory were not reasonable trial strategy. Petitioner fails to demonstrate deficient performance and prejudice under *Strickland*, and his conclusory assertions to the contrary are insufficient to warrant habeas relief.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 18) is GRANTED and this case is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas, on September 11, 2019.

Gray H. Miller
Senior United States District Judge